ARCHER DANIELS MIDLAND

v.

**Shirley McNAMARA, Secretary Louisiana Department of Revenue and Taxation.**

Civ. A. No. 81–698–B.

United States District Court,
M. D. Louisiana.

July 26, 1982.

---

Herschel L. Abbott, Jr., Edward H. Bergin, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff.

Howard M. Romaine, Dept. of Revenue and Taxation, State of La., Baton Rouge, La., for defendant.

POLOZOLA, District Judge:

This case involves a question as to the constitutionality of Louisiana's gasohol statutes which are incorporated in Title 47, Sections 305.28, 714.1 and 802.1 of the Louisiana Revised Statutes. For reasons which follow, the Court finds that 28 U.S.C. § 1341, commonly referred to as the "Tax Injunction Act" acts as a complete barrier to the Court's jurisdiction in this case even though federal questions, including constitutional questions, may be involved. Therefore, since this Court is without jurisdiction plaintiff's suit must be dismissed.

The plaintiff, Archer Daniels Midland Company (ADM) filed this suit seeking a declaration that LSA–R.S. 47:305.28, 47:714.1 and 47:802.1 are unconstitutional under the Commerce and Equal Protection clauses of the United States Constitution insofar as these statutes purport to limit the tax exemptions in favor of gasohol only

to such gasohol that is made with alcohol distilled in Louisiana from agricultural products grown within the State of Louisiana. Named as a defendant in this suit is Shirley McNamara, Secretary of the Department of Revenue and Taxation of the State of Louisiana. After this suit was filed, the defendant filed a motion to dismiss the suit on the grounds that the Court lacks jurisdiction (1) by virtue of the provisions of 28 U.S.C. § 1341, the principle of comity and the doctrine of abstention; and, (2) the complaint does not present a case or controversy in that the alleged discriminatory effect of the Louisiana statutes is hypothetical and, therefore, does not present a justiciable controversy. The motion to dismiss is opposed by the plaintiff.

The threshold question involved is whether or not this Court has jurisdiction over the subject matter suit.

28 U.S.C. § 1341 provides that:

> The district courts shall not enjoin, suspend or restrain the assessment levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

■ It is well settled that Section 1341 applies to suits wherein declaratory relief is sought. *Tully v. Griffin, Inc.*, 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976); *City of Houston v. Standard-Triumph Motor Co.*, 347 F.2d 194 (5 Cir. 1965) cert. denied, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466; *Edwards v. Transcontinental Gas Pipe Line*, 464 F.Supp. 654 (M.D.La.1979). The statute "implements important principles of comity and is a broad jurisdictional barrier to claims made in federal court that a state tax is illegal or unconstitutional. *"Edwards,* 464 F.Supp. at 657. Furthermore, the "statute has its roots in equity practice, in principles of federalism and in recognition of the imperative need of a state to administer its own fiscal operations." *Tully,* 97 S.Ct. at 219. The presence of federal questions, including constitutional questions, does not affect the applicability of § 1341. *Hickmann v. Wujick,* 488 F.2d 875 (2 Cir. 1973).

■ In addition to the prohibition set forth in 28 U.S.C. § 1341, principles of comity prohibit a federal court from restraining the collection of state taxes. Such comity considerations have been found to bar declaratory as well as injunctive relief even when the constitutionality of the tax is at issue. *Great Lakes Dredge and Dock Company v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). In *Great Lakes,* supra, the United States Supreme Court stated:

> The considerations which persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax, and which led to the enactment of the Act of August 21, 1937, are persuasive that relief by way of declaratory judgment may likewise be withheld in the sound discretion of the court. With due regard to these considerations, it is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature had provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this Court. This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its taxes.

63 S.Ct. at 1074.

The principles enunciated in *Great Lakes* and embodied in 28 U.S.C. § 1341 were recently reiterated by the United States Supreme Court in *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). In the *Fair Assessment* case the Court held that comity principles barred a damage action in federal court under 42 U.S.C. § 1983 to redress allegedly unconstitutional administration of a state tax where a state remedy was available. The Court found that The Tax Injunction Act is not the only source of such a bar to the federal courts:

> ... [F]ederal court restraint in state tax matters was based upon the traditional doctrine that courts of equity will

stay their hand when remedies at law are plain, adequate, and complete.

at ——, 102 S.Ct. at 182.

Thus, it is abundantly clear that if a "plain, speedy and efficient remedy" is available in the state court, the Tax Injunction Act and principles of comity are a complete barrier to the jurisdiction of the federal court, even though federal questions, including constitutional questions, may be involved. *Fair Assessment in Real Estate Association v. McNary,* supra; *Blaske v. Bowen,* 437 F.Supp. 1056 (D.C.Ind. 1976), affirmed 559 F.2d 1224 (7 Cir. 1976); *Edwards v. Transcontinental Gas Pipe Line Corp.,* supra.

Thus, the Court must determine whether or not the plaintiff has a "plain, speedy and efficient remedy" available to it in the Louisiana state courts. To resolve this issue, it would be helpful to set forth the background of the state tax statutes which are involved in this case, plaintiff's involvement therewith, and the remedies which are provided to ADM under Louisiana law.

In 1979 the Louisiana Legislature enacted R.S. 30: §§ 1301 and 1302 which define gasohol [1] and set forth the purposes of the gasohol statute and R.S. 47 § 305.28, § 714.1 and § 802.1, which exempt gasohol from the sales and use tax, the gasoline tax and the special fuels tax, respectively.[2] According to the complaint, ADM is the largest producer of fuel grade alcohol in the United States, providing 65% of the alcohol presently consumed in the United States from its two plants which are located outside of the State of Louisiana. ADM does not distill fuel grade alcohol in Louisiana and none of its alcohol is distilled from

agricultural products grown within Louisiana.[3] ADM contends that it markets its fuel grade alcohol on a nationwide basis, but is unable to market its alcohol in Louisiana because it does not qualify for the exemptions provided for in the gasohol statutes.[4]

There are two basic remedies available under Louisiana law to challenge the constitutionality of the taxes involved in this case. A party may comply with the provisions of La.R.S. 47:1576. Section 1576 provides that a person who feels aggrieved by the assessment, levy or collection of a state tax in Louisiana may pay the tax assessed under protest, and, within the time limits provided in the statute, sue for the recovery thereof. The statute affords a taxpayer of a "full and complete adjudication" of the legality and method of enforcement of the tax statute complained of. The statute also provides a legal remedy in the state court in cases where the tax is claimed to be an unlawful burden on interstate commerce or in violation of any act of Congress, the United States Constitution or the statutes or Constitution of Louisiana.

Plaintiff contends that it may not be afforded a remedy under La.R.S. 47:1576 because ADM is not personally liable for the taxes, although its potential customers could be. Of the three taxes involved in this case, namely, the sales and use tax, the gasoline tax and the special fuels tax, ADM has potential liability as a collector of taxes only on the gasoline tax. Thus, the sale by the plaintiff of fuel grade alcohol to a Louisiana firm that mixes alcohol with gasoline to make gasohol is not a taxable transaction under the Louisiana Sales and Use Tax

---

1. La.R.S. 30:1302(2) defines gasohol as "a new product composed of a blend of gasoline and not less than ten percent alcohol."

2. La.R.S. 47:305.28 provides an exemption from the Louisiana sales and use tax for gasohol if the alcohol contained therein was distilled in Louisiana. Gasohol is exempt from the state gasoline tax under La.R.S. 47:714.1 if the alcohol used therein was distilled in Louisiana from agricultural products, of which at least 10% were grown within the State of Louisiana. La.R.S. 47:802.1 provides an exemption for gasohol from the special fuels tax if the alcohol

therein is distilled in Louisiana from agricultural products.

3. All of ADM's fuel grade alcohol is sold for blending into gasohol since none of the alcohol is used as a motor fuel unless it is first blended with gasoline. ADM does not blend or market gasohol.

4. Gasohol which qualifies for the tax exemptions is exempt from the gasoline and motor fuels tax at the rate of 8 cents per gallon.

because the alcohol is a material which is processed further into gasohol for sale at retail.[5] ADM would not be liable under the Louisiana Special Fuels Tax because the sale of alcohol by the plaintiff is for further processing into gasohol and not for storage for sale to a consumer or for use by a consumer.[6] Under the Louisiana Gasoline Tax, ADM is liable as a dealer to collect the tax from a Louisiana firm which buys alcohol and sells it in the form of gasohol to a Louisiana consumer.[7]

■ However, it is not necessary for the Court to determine whether ADM can avail itself of the procedures set forth in La.R.S. 47:1576[8] because ADM does have a "plain, speedy and efficient remedy" to contest the validity of the taxes involved in this case under Articles 1871 and 1872 of the Louisiana Code of Civil Procedure.[9]

Article 1871 provides:

Art. 1871. Declaratory judgments; scope

Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.

Article 1872 states:

A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status,

or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

The issue involved in this suit is very simple. ADM challenges the constitutionality of the state taxes involved herein on the grounds that the taxes violate the Commerce and Equal Protection clauses of the United States Constitution. The State Declaratory Judgment statute clearly, allows ADM to present this question to the appropriate state court for decision. ADM contends that *Giraud v. City of New Orleans*, 359 So.2d 294 (4 Cir. 1978), writ denied, 362 So.2d 579, bars it from proceeding under the state declaratory judgment statutes. The Court disagrees. In *Giraud*, the court ruled that a suit for recovery of taxes paid under protest is the only remedy available to *taxpayers* seeking to challenge the validity of an ad valorem property tax. The court held that the taxpayer could not seek declaratory relief. The *Giraud* case is clearly distinguishable from the case sub judice. In *Giraud*, declaratory relief was unavailable to taxpayers because of the § 1576 remedy. ADM is *not* a taxpayer under the facts of this case and thus, may not be able to avail itself of the procedures set forth in § 1576. However, there is nothing in the *Giraud* case which precludes a party, such as ADM, from availing itself of the procedures set forth in the state declaratory judgment statute to challenge the constitutionality of a state tax.[10] It is clear that

---

**5.** See La.R.S. 47:301 and 302.

**6.** See La.R.S. 47:801, 802 and 803.

**7.** See La.R.S. 47:711, 712 and 721.

**8.** It has been held by the Louisiana courts that dealers who collect taxes have no beneficial interest to maintain a suit to recover such taxes paid under protest since the customer alone has the right since it is the customer who is taxed. *Chrysler Corporation v. City of New Orleans*, 243 La. 498, 145 So.2d 11 (1962); *Krauss Company v. Develle*, 236 La. 1072, 110 So.2d 104 (1959).

**9.** Article 1881 of the Louisiana Code of Civil Procedure provides that the articles pertaining to declaratory judgments are remedial and are meant to be liberally construed and administered. The parties who must be named in a lawsuit challenging the constitutionality of a state statute are set forth in Article 1880 of the Louisiana Code of Civil Procedure.

**10.** In *Lafayette Parish School Board v. Market Leasing Company, Inc.*, 407 So.2d 23 (3 Cir. 1981), the Court recognized that while a suit for the recovery of state taxes paid is generally the exclusive method of challenging the validity

Articles 1871 and 1872 of the Louisiana Code of Civil Procedure specifically authorize declaratory actions to determine the validity and constitutionality of a state statute.

■ Plaintiff also argues that Article VII, § 3 of the Louisiana Constitution prohibits a declaratory action to contest the validity of a tax. Article VII, § 3 provides:

§ 3. Collection of Taxes

Section 3. The legislature shall prohibit the issuance of process to restrain the collection of any tax. It shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.

However, Section 3 only prohibits the issuance of process to restrain the collection of a tax. It does not prohibit an action seeking a declaration of constitutionality of the tax. Furthermore, Section 3 addresses itself to remedies for taxpayers, a category which ADM does not fall into under the facts of this case.

Finally, ADM argues that La. 47:1575 prohibits it from seeking a declaratory judgment. The Court does not agree. There is nothing in § 1575 which precludes ADM from seeking the same declaratory relief in the state court which it seeks in this federal court.

Thus, the Court finds that ADM does have a "plain, speedy and efficient remedy" available to it in state court under the Louisiana Declaratory Judgment Act. It is settled and appropriate that a "federal court is under an equitable duty to refrain from interfering with a State's collection of its revenue except in cases where an asserted federal right might otherwise be lost." *Tully v. Griffin*, 97 S.Ct. at 222. The suit filed by ADM invites this federal court to "interfere with a State's collection of its revenue". This Court declines to accept such an invitation. The state courts are very capable of resolving the issues raised by ADM in this suit. There is absolutely no reason to believe that plaintiff's federally protected rights, whether under the United States Constitution or under federal statutes, will not be protected by the state courts. Furthermore, ADM has the right to appeal any adverse decision rendered by the Louisiana Courts to the United States Supreme Court. Thus, ADM will not be deprived of any federal rights by utilizing the "plain, speedy, and efficient remedy" afforded to them under state law to contest the legality of the gasohol tax statutes.

■ Furthermore, even if this Court assumes that it has subject matter jurisdiction in this case and that the Tax Injunction Act is not applicable, the Court has the discretion under 28 U.S.C. § 2201[11] to deny declaratory relief where the very same declaratory relief is available in state court. It is settled that the word "may" in 28 U.S.C. § 2201 does not mean "shall". *Solenoid Devices, Inc. v. Ledex*, 375 F.2d 444 (9 Cir. 1967).

It is certain that the relief sought by ADM is to have this Court enjoin the State of Louisiana from collecting taxes under the provisions of La.R.S. 47:305.28, 714.1, and. 802.1. It is equally certain that the Tax Injunction Act prohibits this Court from involving itself in the determination of the constitutionality of these state tax statutes.

In *Edwards v. Transcontinental Gas Pipe Line*, supra, Senior United States District Judge E. Gordon West set forth the following statement which this Court totally agrees with and believes is an appropriate conclusion for the Court's decision to refrain from interfering with Louisiana's collection of its revenues:

of a state tax, La.R.S. 47:1576 may not be an appropriate remedy in all fact circumstances. The Court held that since "no express tax provision deals with this matter the trial court was justified in resorting to codal articles to reach an equitable result." 407 So.2d at 25. Such a procedure was found to be "equitable," "consistent with the construction of tax statutes," and in "the interests of judicial economy". Id. at 25.

11. 28 U.S.C. § 2201 does not supply independent grounds of jurisdiction where none otherwise exists.

... The United States District Courts are courts of limited jurisdiction and therefore all grants of jurisdiction must be strictly construed and all express limitations thereon must be carefully noted and adhered to. The Tax Injunction Act expressly limits the jurisdiction of this Court where a "plain, speedy and efficient remedy" is provided in the State Court, and this Court finds that there is such a remedy available to the parties in this case. The fact that the amount of taxes that may be collected is large, or that the issues involved are of national importance, is of no moment. The Tax Injunction Act is not confined to small, insignificant or local problems. It is a direct prohibition against this Court enjoining, suspending or restraining the assessment, levy, or collection of *any* tax under State law where a "plain, speedy and efficient remedy" is available in the State Court. The limitation on jurisdiction is express and unambiguous. This case involves no special circumstances whatsoever to indicate that it should fall outside of the Tax Injunction Act. Regardless of the enormity of the tax involved, and regardless of the numerosity of the persons claiming to be aggrieved, the fact remains that this is very simply a suit wherein one party seeks a declaration to the effect that the state tax involved is valid and constitutional, and the other party seeks a declaration that the state tax involved is unconstitutional and invalid. The Tax Injunction Act removes this case from within the jurisdiction of this Court.

464 F.Supp. at 659, 660

For the above reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED.

Judgment shall be entered accordingly.