**James E. WALDRON, Jack Hobbs, and all Retired Military, Federal Officers, Agents, and Employees Similarly Situated, Plaintiffs-Appellees,**

v.

**Marcus COLLINS, Individually, and in his capacity as Georgia State Revenue Commissioner, Defendant-Appellant.**

No. 85–8556.

United States Court of Appeals, Eleventh Circuit.

May 6, 1986.

Rehearing and Rehearing En Banc Denied June 30, 1986.

Warren R. Calvert, Asst. Atty. Gen., Atlanta, Ga., for defendant-appellant.

James F. Findley, John C. Bell, Jr., Bell & Bell, P.C., Augusta, Ga., for plaintiffs-appellees.

Before KRAVITCH and HATCHETT, Circuit Judges, and DUMBAULD *, Senior District Judge.

---

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

HATCHETT, Circuit Judge:

In this case, we are called upon to decide whether Georgia's procedures for litigating state tax assessments are inadequate because they do not provide for class actions. The district court held Georgia's procedures inadequate; we reverse.

A group of federal retirees residing in Georgia (taxpayers), brought this class action in federal district court alleging that the state of Georgia's tax policy discriminated against them because it imposed taxes on their retirement benefits, but exempted state of Georgia retirees' benefits from taxation. The taxpayers contended that Georgia's policy violated the equal protection clause and the Public Salary Tax Act of 1939, 4 U.S.C. § 111.[1]

The taxpayers sought declaratory and injunctive relief against the state of Georgia and Marcus Collins, Georgia State Revenue Commissioner. Georgia and Collins moved to dismiss the action citing the Tax Injunction Act, 28 U.S.C. § 1341 and the eleventh amendment. The Tax Injunction Act prevents taxpayers from litigating in federal courts if state remedies for contesting state tax assessments are "plain, speedy, and efficient."

After a hearing, the district court denied Collins's motion to dismiss, granted the state of Georgia's motion to dismiss, but granted the taxpayers leave to amend their complaint. The taxpayers' amended complaint added the Georgia Department of Revenue as a defendant and added a claim under 42 U.S.C. § 1983 seeking $300 million in state income tax refunds and other damages. Collins and the Georgia Depart-

ment of Revenue moved to dismiss the taxpayers' amended complaint for lack of subject matter jurisdiction, again citing the Tax Injunction Act and the eleventh amendment. The district court granted the Georgia Department of Revenue's motion to dismiss, but denied Collins's motion to dismiss. The court held that it was not deprived of jurisdiction because Georgia's remedies for litigating state income tax questions were not "plain, speedy, and efficient" within the meaning of the Tax Injunction Act. The district court ruled that the defect in Georgia's scheme was its failure to provide for class actions. The district court certified its order to this court for immediate review. We granted Collins permission to appeal.

On appeal, Collins contends that Georgia's procedures for litigating state income tax questions are "plain, speedy, and efficient" within the meaning of the Tax Injunction Act, and that the absence of a provision for class actions does not render the state's procedures inadequate. The taxpayers contend, among other things, that the Georgia scheme is inadequate and that the Public Salary Tax Act of 1939 confers jurisdiction upon the district court notwithstanding the Tax Injunction Act's bar.[2]

The Tax Injunction Act, 28 U.S.C. § 1341, provides that:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.[3]

---

1. The Public Salary Tax Act of 1939 provides that:

   > The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States, a territory or possession or political subdivision thereof, the government of the District of Columbia, or an agency or instrumentality of one or more of the foregoing, by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

2. The taxpayers also contend that the district court prematurely dismissed the state of Georgia and the Georgia Department of Revenue. That issue is not properly before us; the district court certified its order, and we allowed this appeal to resolve one question: whether Georgia's procedures for litigating state income tax questions are plain, speedy, and efficient within the meaning of the Tax Injunction Act?

3. Congress had a two-fold purpose in passing the Tax Injunction Act. First, Congress sought to foreclose the federal forum to foreign corporations that invoked federal diversity jurisdic-

■ Thus, federal jurisdiction may not be exercised if two elements are present: (1) the relief requested by the plaintiff will "enjoin, suspend, or restrain" a state tax assessment; and (2) the state affords the plaintiff a "plain, speedy, and efficient remedy." *Williams v. City of Dothan, Alabama,* 745 F.2d 1406, 1411 (11th Cir.1984). The first element is present in this case because the taxpayers pray for damages and injunctive relief. *See Moss v. State of Georgia,* 655 F.2d 668 (5th Cir.1981); *A Bonding Company v. Sunnuck,* 629 F.2d 1127, 1133 (5th Cir.1980).

■ The district court's rationale for holding that Georgia's procedures were not plain, speedy, and efficient within the meaning of the Tax Injunction Act, was that:

> [A] class action suit in federal court will be more efficient than a myriad of different claims and that the progress of such—even through appeal—will consume less time than will the process of many claims through the Department of Revenue and the courts of the state.

The district court's evaluation of the relative convenience of the state and federal forums is correct; however, the applicability of the Tax Injunction Act does not turn on which forum is best able to entertain the action. Rather, the Act bars the exercise of federal jurisdiction whenever the state provides adequate procedures to contest state tax matters.

■ In *Bland v. McHann,* 463 F.2d 21 (5th Cir.1972), the plaintiffs contended that Mississippi's procedure for litigating tax liability questions was inadequate because it did not provide for class action litigation. Among other things, the former Fifth Circuit stated:

Taxpayers' complaints that the Mississippi remedy is inadequate appear in reality to be an argument that a *better* remedy would be available in the federal courts. Neither the judicial decisions nor § 1341 requires that the state remedy be the best remedy available or even equal to or better than the remedy which might be available in the federal courts. Section 1341 merely requires that the state remedy be 'plain, speedy and efficient.' *McHann* at 29.

Georgia taxpayers may utilize four statutory means to contest their tax liability. They may: (1) appeal the assessment directly to the superior court pursuant to O.C.G.A. § 48–2–59; (2) pay the tax and bring an action for a refund pursuant to O.C.G.A. § 48–2–35; (3) file an affidavit of illegality to the levy of execution and have the case heard in superior court pursuant to O.C.G.A. § 48–3–1; and (4) appeal under Georgia's Administrative Procedure Act, O.C.G.A. § 50–13–12.

We conclude that the absence of a provision for class actions does not render Georgia's procedures for litigating tax matters inadequate within the meaning of the Tax Injunction Act.

Other circuits have come to the same conclusion. *See Miller v. Bauer,* 517 F.2d 27 (7th Cir.1975); *Mandel v. Hutchinson,* 494 F.2d 364 (9th Cir.1974). We are not persuaded to conflict with our sister courts. The taxpayers, citing *Garrett v. Bamford,* 538 F.2d 63 (3d Cir.1976), contend that such a conflict already exists. Reviewing *Garrett,* however, we conclude that the Third Circuit's decision does not conflict with the other circuits.

In *Garrett,* residents of a non-white area of Berks County, Pennsylvania, brought a class action in district court alleging that

tion to delay payment of state taxes. Congress felt it unjust that corporations could bring such actions in federal court because state citizens could not obtain a federal forum based on diversity jurisdiction. By passing the Tax Injunction Act, therefore, Congress sought to provide for equal treatment between corporations and citizens regarding payment of state taxes. Second, Congress sought to end the disruption of

local financing resulting from injunction actions in the federal courts. By bringing actions in the federal courts, taxpayers often frustrated the collection efforts of local officials, forcing them to compromise suits and lose tax revenues. *See Williams v. City of Dothan, Alabama,* 745 F.2d 1406, 1412 n. 7 (11th Cir.1984); *Tramel v. Schrader,* 505 F.2d 1310 (5th Cir.1975).

the county's method of tax assessment was racially discriminatory in violation of 42 U.S.C. §§ 1981, 1983, and the fourteenth amendment. The district court dismissed the claim. The Third Circuit reversed holding that the statutory remedy was not plain, speedy, and efficient in cases where "plaintiffs allege systematic and intentional class based racial discrimination in tax assessments." *Garrett* at 72. *Garrett* does not stand for the proposition that a state procedure which does not provide for class action litigation is not plain, speedy, and efficient within the meaning of the Tax Injunction Act.

In a subsequent decision, *Robinson Protective, etc. v. City of Philadelphia*, 581 F.2d 371 (3d Cir.1978), the Third Circuit explained the peculiar concerns underlying the court's decision in *Garrett* which are not commonly present in cases involving challenges to tax assessments. *See Robinson* at 377, 378. The *Robinson* court accorded significance to the fact that *Garrett* involved an equal protection challenge based on a claim of racial discrimination.

> Where state tax codes utilize classifications which are constitutionally suspect, triggering strict scrutiny, we may require greater certainty of the adequacy of the state remedy before closing the federal equity courthouse door. However, where state taxpayers' constitutional challenge necessitates only minimum scrutiny of the rationality of economic classifications, a somewhat less strict certainty as to the adequacy of state remedies may be sufficient.

*Robinson* at 378 n. 15.

Even if *Garrett* stood for the proposition that the taxpayers advance, we would not be inclined to follow it.

The taxpayers allege several other inadequacies in the Georgia procedure for litigating tax matters in addition to the lack of a class action litigation remedy. The district court held the Georgia procedure inadequate because it did not provide for class action litigation; consequently, we need not consider claims which go beyond the district court's ruling and certification.

We hold that the absence of a provision for class actions does not render Georgia's procedure for litigating state income tax questions inadequate. The judgment of the district court is reversed.[4]

**REVERSED.**

---

4. Principles of comity also caution against our providing the taxpayers a federal forum in this case. *See Winicki v. Mallard,* 783 F.2d 1567, (11th Cir.1986), where this court held that the principle of comity barred a federal action challenging the constitutionality of Florida's homestead tax exemption statute, even though the statute was subsequently repealed.